UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ADRIENNE FEATHER,

                Plaintiff,

v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

                Defendant.

CASE NO. C17-1747-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Adrienne Feather proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REVERSED and REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1979.[1] She has a GED, and has worked as a childcare

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

provider and home healthcare provider. (AR 235, 267.)

Plaintiff applied for DIB and SSI in June 2014 and April 2015, respectively. (AR 111, 200-01, 211-16.) Those applications were denied and Plaintiff timely requested a hearing. (AR 140-42, 147-53.)

On August 5, 2016, ALJ Eric S. Basse held a hearing, taking testimony from Plaintiff, Plaintiff's mother, and a vocational expert (VE). (AR 37-89.) On October 3, 2016, the ALJ issued a decision finding Plaintiff not disabled. (AR 20-31.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on September 22, 2017 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since January 26, 2014, the alleged onset date. (AR 22.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's ankylosing spondylitis; attention deficit hyperactivity disorder; bipolar affective disorder; obsessive-compulsive disorder; disorders of reading, written expression, and auditory processing; and drug and alcohol abuse. (AR 22-23.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 23-24.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with the following additional limitations: she can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes, or scaffolds. She can have no concentrated exposure to vibration or hazardous conditions (unprotected heights). She can perform simple, routine, repetitive tasks. She can make simple work-related decisions, and tolerate no more than occasional workplace changes. She can complete a regular workday with normal breaks. She can occasionally interact with the public, co-workers, and supervisors, so long as the interaction is brief and superficial. She cannot be required to read instructions or write reports. Simple instructions are acceptable. Her job should have clear and concise expectations and directions. (AR 24.) With that assessment, the ALJ found Plaintiff unable to perform her past relevant work. (AR 29-30.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of transitioning to other representative occupations including electronics worker, small products assembler, and electrical accessory assembler. (AR 30-31.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) failing to account for limitations caused by her digestive disorder in the RFC assessment, (2) assessing medical opinions, (3) discounting her subjective symptom testimony, and (4) discounting statements from Plaintiff's mother. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## Digestive disorder

Plaintiff argues that the ALJ erred in failing to account for limitations caused by her digestive disorder. She does not challenge the ALJ's step-two finding that her digestive disorder was not severe, but argues that even if it was non-severe, the ALJ should have nonetheless addressed her alleged limitations caused by the digestive disorder when assessing her RFC. Dkt. 11 at 3. The Commissioner acknowledges that the record makes some mention of symptoms or limitations caused by Plaintiff's digestive disorder, but argues that because the limitations did not impact her ability to work for a twelve-month period, the ALJ did not err in failing to account for them. Dkt. 12 at 2.

The Commissioner is incorrect that the record does not document that Plaintiff's digestive issues caused significant limitations for at least twelve months. The record is replete with references to Plaintiff's digestive complaints and related limitations in 2014, 2015, and 2016. (*See, e.g.*, AR 55-56, 67, 430-42, 512-16, 629-32, 674-76, 759-60, 1163-66, 1225.) Furthermore, although the ALJ claimed that he considered all non-severe impairments in assessing Plaintiff's

RFC (AR 23), there is no discussion of Plaintiff's allegations of limitations caused by her digestive condition at any point in the ALJ's decision. This is reversible error, because an ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe, in assessing the claimant's RFC. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citing Social Security Ruling, 1996 WL 374184, at *5 (Jul. 2, 1996)). On remand, the ALJ shall explicitly discuss the Plaintiff's allegations of limitations caused by her digestive disorder and either credit them or provide legally sufficient reasons to discount them.

<u>Subjective symptom testimony</u>

The ALJ discounted Plaintiff's subjective symptom testimony for a number of reasons: (1) the medical evidence showed that her limitations due to ankylosing spondylitis were not as severe as alleged; (2) her mental symptoms were generally controlled by medication and counseling, and her activities indicated that her mental limitations were not disabling; and (3) she frequently failed to attend counseling sessions and did not take medication as prescribed. (AR 25-29.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

<u>Ankylosing spondylitis</u>

With regard to the first reason, the ALJ cited evidence showing that Plaintiff's ankylosing spondylitis was controlled by two different medications, used during two time periods, and that her physical examinations did not reveal severe limitations. (AR 26-28.) Plaintiff's opening brief does not present any challenge to these findings, and this reason is a clear and convincing basis to discount Plaintiff's subjective statements regarding the severity of her limitations caused by ankylosing spondylitis.

/ / /

Mental limitations

As to the second reason, the ALJ cited evidence showing that Plaintiff's mental conditions were well-managed via counseling and/or medication, and that the few mental limitations that persisted were not disabling. (AR 25-29.) The ALJ also indicated that the two major exacerbations of Plaintiff's symptoms during the adjudicated period, which resulted in increases in symptoms and short-term hospitalization, were caused by drug use. (AR 27-29.) The ALJ also noted that Plaintiff was able to create feather mobiles and intended to sell them, which the ALJ interpreted as evidence that Plaintiff possessed "a level of forethought and attention at least consistent with the RFC's restriction to simple work, and an ability to create, plan, and execute plans with forward-looking thinking." (AR 27-28.)

Plaintiff disputes whether her two hospitalizations were actually caused by drug use (as found by the ALJ), or whether her increasing symptoms led to her drug use. Dkt. 11 at 15-16. In both situations, Plaintiff was noted to have been using drugs in the weeks or days prior to her hospitalization, and the ALJ reasonably found that this usage contributed to her symptoms, as Plaintiff's providers suspected. (*See* AR 355 (note from first hospitalization emphasizing that Plaintiff "has not disclosed [her marijuana or hallucinogen Salvia or Magic Mint] to her outpatient provider, and she is open [to] possibility this may be indelibly impacting her response to treatment in contributing to her low mood"), 870 (note from second hospitalization stating that Plaintiff "has had worsening bipolar disorder, depression and thoughts of suicidal ideation for the last 2 weeks, which has been significantly worse in the last week after she smoked heroin").)

The ALJ appears to have misapprehended the extent of Plaintiff's drug use, however. The ALJ describes her drug use as "not consistent" and "not for an extended period of time." (AR 28-29.) This characterization does not account for the entire record, which includes treatment notes

from 2016 indicating that Plaintiff revealed more ongoing use for a year prior to May 2016, and indicated that she had been clean and sober for only "(up to) a couple of weeks." (*See, e.g.*, AR 986, 990, 992, 1002, 1023, 1102, 1109.) Plaintiff's ongoing drug use and failure to divulge this information to her providers as well as her refusal to stop using marijuana against medical advice (AR 1237-44) further undermine the reliability of her self-reporting. Therefore, the ALJ's failure to appreciate the full extent of Plaintiff's substance use does not necessarily suggest error in the ALJ's assessment of Plaintiff's subjective self-reporting, but the ALJ should nonetheless reconsider this issue on remand.

Plaintiff also argues that the ALJ erred in finding that her capacity to make feather mobiles demonstrated that she could work, because the record does not contain any details about how she created these crafts. Dkt. 11 at 15. Plaintiff's point is well-taken: it is not clear from the scant details in the record how long Plaintiff spent creating this artwork and the processes she used. Given that Plaintiff suggested that her creativity was tied to her mania (AR 993), it is not reasonable to assume that this activity demonstrated, as the ALJ found, that she could sufficiently plan ahead and maintain attention. (AR 27-28.) On remand, the ALJ shall reconsider the evidence of Plaintiff's activities, and further develop that record if necessary.

Failure to comply with treatment

The ALJ noted that the record contains evidence of frequent no-shows/therapy cancelations, and that Plaintiff admitted that she did not take her medications as prescribed. (AR 26 (citing AR 581-93).) The ALJ found that this evidence suggested that Plaintiff was not "engaged in care that reasonably would have resulted in medical improvement." (*Id.*)

Plaintiff admits that a failure to comply with treatment can be a valid reason to discount a claimant's subjective testimony, but argues that the ALJ should have considered the reason why

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 7

she failed to comply. Dkt. 11 at 14-15. The Commissioner does not explicitly defend this line of the ALJ's reasoning. On remand, the ALJ shall reconsider this reason and address the reasons, if any, supported by the record explaining why Plaintiff failed to comply.

Accordingly, because the ALJ must reconsider aspects of the assessment of Plaintiff's subjective complaints, the ALJ shall also reconsider Plaintiff's mother's statements, which were similar to Plaintiff's statements and discounted for the same reasons.

### Medical evidence

Plaintiff challenges the ALJ's assessment of opinions written by two treating providers, psychiatrist Margaret Bone, M.D., and Lynne Munoz, NP. The ALJ discounted Dr. Bone's opinion (AR 755-58) because she had not treated Plaintiff for a long period of time when she wrote the opinion, and her opinion was inconsistent with concurrent treatment notes. (AR 29.) The ALJ rejected Ms. Munoz's opinion that Plaintiff could not work (AR 811-13), because it was inconsistent with the medical record, her activities, and her work history. (*Id*.) The ALJ also noted that Ms. Munoz primarily treated Plaintiff's physical conditions, which were generally stable, which undermined the probative value of her opinion as to Plaintiff's mental limitations (AR 1233-35). (*Id*.) The ALJ did, however, give "significant consideration" to the specific limitations identified by Ms. Munoz and credited the ones that were consistent with an examining psychologist's opinion. (*Id*.) The Court will address each disputed opinion in turn.

<u>Legal standards</u>

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear

and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

<u>Dr. Bone</u>

Plaintiff raises several challenges to the ALJ's assessment of Dr. Bone's opinion. First, Plaintiff disputes whether the ALJ accurately characterized her treatment relationship with Dr. Bone as "brief" at the time the opinion was written, in March 2014. Plaintiff cites evidence in the record to suggest that Dr. Bone began treating Plaintiff in at least as early as July 2010, as well as 2015 treatment note indicating that Plaintiff had been seeing Dr. Bone "for many years" until Plaintiff's insurance no longer covered Dr. Bone. Dkt. 11 at 6 (citing AR 402, 762). The Commissioner notes that the record contains only Dr. Bone's treatment notes dating from July 31, 2014, through October 15, 2014, which corroborates the ALJ's interpretation of the length of the treatment relationship. Dkt. 12 at 8-9 (citing AR 552-56). But it appears that earlier records were not requested of Dr. Bone, which explains why they are not part of the administrative record. (*See* AR 552.) Furthermore, the records related to Plaintiff's hospitalization in January 2014 describe Dr. Bone as the psychiatrist "follow[ing]" Plaintiff's case, which indicates she had already begun treating Plaintiff by that time, contrary to the Commissioner's suggestion. (AR 786.)

The ALJ's other reason to discount Dr. Bone's opinion is also problematic. The ALJ noted that Plaintiff's bipolar disorder was stabilized on medication at the time of Dr. Bone's opinion, and that subsequent records show that Plaintiff was "able to perform intricate, detailed tasks, set goals, and demonstrated medical improvement with an improved mood and future orientation[,] indicating greater ability to adapt, perform tasks within a schedule, and stay on task than opined by Dr. Bone." (AR 29 (citing AR 394-541 (March-July 2014 treatment notes), 978-1023 (February-May 2016 treatment notes)).) Indeed, the 2014 notes cited by the ALJ contain references to Plaintiff's bipolar disorder as stable or becoming more stable on medication. (AR 399, 419, 455, 459-60.) The 2016 notes, however, reveal a different picture: Plaintiff admitted to her counselor that she had been using drugs and abusing her prescriptions, and concealing that use from her providers for a year. (AR 1005-08.) Throughout this period of renewed substance use and abuse, Plaintiff's symptoms were exacerbated and she experienced periods of suicidal feelings, irritability, and mood swings. (*See, e.g.*, AR 991-92, 996, 999, 1003-04.) The 2016 treatment notes do not reveal Plaintiff to be as functional as the ALJ claimed.

Thus, on remand, the ALJ shall reconsider the weight to be given to Dr. Bone's assessment. The Court notes that Dr. Bone indicated that Plaintiff would be impaired for possibly three months (AR 757), which would not satisfy the twelve-month durational requirement, but the ALJ did not cite this as a reason to discount it. The ALJ should reconsider Dr. Bone's opinion in its entirety and either credit it or provide legally sufficient reasons to discount it.

Ms. Munoz

Ms. Munoz completed form opinions regarding Plaintiff's physical and mental functioning, in March 2016 and June 2016, respectively. (AR 811-13, 1233-35.) At the time of the March 2016 opinion, Ms. Munoz was not aware of Plaintiff's substance use, but it had been revealed by

the time of the June 2016 opinion. (AR 813, 1109-10, 1234.)

In March 2016, Ms. Munoz opined that Plaintiff was "currently unable to work" due to physical pain caused by spondyloarthritis and Crohn's disease, as well as "destabilizing psychiatric disease." (AR 812.) The ALJ found this opinion to be inconsistent with "the record, the claimant's activities, and past work." (AR 29.) Earlier in the decision, the ALJ had explained why he discounted Plaintiff's allegations related to ankylosing spondylitis, and why he found Plaintiff's mental limitations to be less severe than alleged when she abstained from drug use. (AR 25-29.) This discussion provides the context for the ALJ's rejection of Ms. Munoz's opinion that Plaintiff's pain is disabling.

Plaintiff goes on to argue that the ALJ failed to provide any reason to reject the portion of Ms. Munoz's second opinion wherein she opined that Plaintiff is markedly limited in her ability to respond appropriately to work pressures in a usual work setting, and to respond appropriately to changes in a routine work setting. (*See* AR 1234.) The Commissioner does not respond to this argument. Dkt. 12 at 9-10. On remand, the ALJ shall explicitly address this portion of Ms. Munoz's June 2016 opinion, and either explain how the RFC accounts for those limitations, or provide legally sufficient reasons to discount them.

## **CONCLUSION**

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this <u>3rd</u> day of August, 2018.

Mary Alice Theiler
United States Magistrate Judge